IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Nextpoint, Inc., )
)
       Plaintiff, )
)
  v. )  No. 15 C 8550
)
Hewlett-Packard Co., et al., )
)
       Defendants. )

MEMORANDUM OPINION AND ORDER

In this action, plaintiff asserts that defendants infringe U.S. Pat. No. 8,447,731 (the "'731 patent"), titled Method and System for Information Management. Defendants have moved to dismiss the action on the ground that the claimed invention is ineligible for patent protection under 35 U.S.C. § 101. For the reasons that follow, I grant the motion.

I.

The following facts are drawn from plaintiff's amended complaint and from the '731 patent, which is attached to it. Plaintiff is the assignee of the '731 patent and describes itself as "a company that has pioneered the use of internet and cloud-based technologies within the legal system." Am. Cmplt. at ¶ 9. The company's founder, Rakesh Madhava, is one of the '731 patent's inventors. *Id*.

Sometime after plaintiff began delivering litigation support services to clients in 2001, Mr. Madhava identified certain shortcomings that led him to develop "a novel system and method to manage the electronic data produced during litigation" using traditional, "non-cloud based" computational resources. *Id.* at ¶ 10.[1] Mr. Madhava recognized, however, that "legacy technology solutions" were "ill-equipped to handle the unpredictable processing and storage requirements of modern litigation." *Id.* at ¶ 11. He thus conceived the idea of adapting his litigation management software for use in a cloud-based environment. This idea led to the invention claimed in the '731 patent. *Id.*

The patent's specification states that the invention "relates generally to a method and system for managing information and more specifically, to tracking information in connection with litigation support services." '731 patent at col. 1:23-25. It goes on to identify examples of these services, such as "managing the designation of exhibits, deponents and other information for one or more cases." *Id.* at col. 1:27-29. The specification states that at the time of the invention, these services were "most common[ly]...provided by

---

[1] The '731 patent explains that "[t]he term 'cloud computing' refers to the use of computational resources that are available remotely over a public network, such as the internet, and that are generally provided at a low cost and on an hourly basis." '731 Patent at 4:57-61.

secretaries or paralegals via spreadsheets designed to calculate numbers and perform mathematical tasks rather than organizational tasks." *Id*. at col. 1:23-32.

The '731 patent contains twenty-one figures, in which "there is illustrated a system and method for managing trial information and generating respective standardized reports that can be used for efficiently tracking the status of the trial information." *Id*. at col. 2:44-48. The figures depict exemplary computers and computer networks on which an embodiment of the invention may be operated and a series of exemplary screen shots depicting windows that may be used in an embodiment. *See* '731 patent at Figs. 1-21. The detailed written description references these figures, describing the invention "in the general context of a computer network **20**, as is well know[n] in the industry, and computer executable instructions being executed by general purpose computing devices within the computer network **20**. '731 patent at col. 2:49-53.

The patent includes nine claims, eight of which depend from claim 1, which recites:

> 1. A method for collecting and managing trial information comprising the steps of:
>
> receiving electronically stored information related to a trial;
>
> storing the electronically stored information in a virtual storage location;

parsing the electronically stored information by analyzing the electronically stored information and extracting various metadata;

dividing the electronically stored information into a plurality of blocks of information, wherein each of said plurality of blocks of information comprises the smallest block of information to be processed at one time depending on type of processing required;

accessing a cloud computing network which provisions a plurality of virtual computers, each of the plurality of virtual computers using computational resources which are available remotely over a public network; and

providing processing instructions to each of the plurality of virtual computers to access the virtual storage location and to process a next available one of said plurality of blocks of information of the electronically stored information, wherein said providing processing instructions to each of the plurality of virtual computers comprises:

providing processing instructions for processing the electronically stored data from the host computer to the cloud computing network;

receiving the processing instructions by the cloud computing network and uploading the processing instructions to at least one virtual computer;

storing, by the at least one virtual computer, of the processed electronically stored data in a storage location;

indicating on a primary database by the at least one virtual computer where the processed electronically stored data is stored; and

making the processed electronically stored data available to a user.

'731 patent at col. 20: 25-60.

Defendants argue that all claims of the '731 patent are invalid because they claim an abstract idea lacking any

"inventive concept" to make them eligible for patent protection. Plaintiff disagrees that the claims are drawn to an abstract idea and argues that even if they were, defendants have not established that the claims lack an inventive concept.

II.

Section 101 of the Patent Act defines the subject matter that is eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long recognized, however, that this definition "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347, 2354 (2014) (internal quotation marks and citation omitted). The Court explained in *Alice* that because the Patent Act's primary object is "[t]o promote the Progress of Science and useful Arts," patent protection must not extend to the "building blocks of human ingenuity," since "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id.* (quoting U.S. Const., Art. I, § 8, cl. 8, *Bilski v. Kappos*, 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010), and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1293 (2012)).

The *Alice* Court cautioned, however, that because "[a]t some level, all inventions...embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id*. (quoting *Mayo*, 132 S. Ct. at 1293) (ellipses in original, internal quotations omitted). Courts' objective in applying the § 101 exception is thus to "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." *Id*. (citations, internal quotation marks, and alterations omitted).

In *Mayo*, the Court established a two-part framework for distinguishing between patents claiming "abstract ideas" (or other ineligible subject matter, but in this case the focus is on abstract ideas) and those that claim patent-eligible applications of those ideas. *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296-97). The first step asks whether the asserted claims are directed to an abstract idea. *Id*. If the answer is "yes," the analysis proceeds to the second step, which examines the elements of each claim both individually and "as an ordered combination" to ascertain whether the claim "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id*. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298)

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008 (en banc), *aff'd*, 561 U.S. 593 (2010). The issue may, in appropriate circumstances, be decided on a motion to dismiss. *See, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (affirming dismissal based on § 101 ineligibility); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (same); *TLI Communications v. AV Automotive*, No. 2015-1372 (Fed. Cir. May 17, 2016) (Slip Op.) (same). When a challenge to subject matter eligibility is asserted on the pleadings, courts construe all claim terms in the manner most favorable to the patentee. *See Content Extraction*, 776 F.3d at 1349.

II.

Lower courts have struggled to apply the *Alice/Mayo* framework consistently in a variety of factual circumstances. As the Federal Circuit recently observed in a case addressing the patent eligibility of abstract ideas, "it is not always easy to determine the boundary between abstraction and patent-eligible subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.33d 1343, 1347 (Fed. Cir. 2015). Illustrating the point, in just the short time since briefing on defendants' motion concluded, the Federal Circuit has issued two decisions on the subject matter eligibility of computer-related

7

patents, reaching opposite conclusions on the specific claims asserted. *Compare Enfish, LLC v. Microsoft Corp.*, ---F.3d---, 2016 WL 2756255 (Fed. Cir. May 12, 2016) (reversing grant of summary judgment under § 101) *with TLI Communications v. AV Automotive*, No. 2015-1372 (Fed. Cir. May 17, 2016) (Slip Op.) (affirming dismissal of complaint based on § 101 ineligibility). Joining the fray, I turn to the first step in the inquiry: is the '731 patent directed to an abstract idea?

Claim 1 of the '731, which is representative of the asserted claims,[2] is directed to the receipt, storage, and processing of electronically stored information ("ESI") in a broadly defined computing environment, and to specific types of processing performed in that environment. *See* '731 patent at col. 20:25-60. Plaintiff does not appear to dispute that the receipt, storage, and processing of ESI are abstract concepts. Indeed, the Federal Circuit held in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), that claims drawn to similarly generic computing functions were directed to abstract ideas. *Id.* at 1348 (holding that "data collection, recognition, and storage"

---

[2] Plaintiff argues that defendants have not established that claim 1 is "representative," but plaintiff has not pointed to, nor have I identified, any limitation in any of the dependent claims whose presence bears on the *Mayo* inquiry. I agree with defendants that the patent eligibility of claim 1 is dispositive of eligibility of the remaining claims.

were well-known concepts that "humans have always performed."). Plaintiff argues, however, that the asserted claims are not drawn to these broad abstract concepts, but instead to a "specific technological solution" to a "specific problem in ESI processing." The face of the patent belies this argument.

According to the specification, the problem facing the inventors was that it was "economically inefficient" to perform ESI processing in a traditional (i.e., non "cloud-based") computing environment because processing litigation-related ESI is "extremely demanding of computational resources such as computer memory, processing, bandwidth, and storage." '731 patent at col. 5:47, 25-27. The specification explains that when using traditional technologies, "the system provider must maintain a large number of computers that are not utilized on a regular basis." *Id*. at col. 5:48-49. It states that "[t]he use of a cloud computing network may help to alleviate the extreme demands placed on traditional computational resources, and dramatically decrease the cost associated with processing electronically stored litigation data **6010** as described above." *Id*. at col. 5:49-53. The specification thus discloses that the basic solution to the problem facing the inventors is in the use of cloud resources, rather than traditional computing technologies, to process electronically stored litigation data. The remainder of the patent confirms this understanding.

Contrary to plaintiff's argument that the '731 Patent describes "a specific manner of processing electronic litigation documents," neither the specification nor the claims themselves identify a "specific" processing method. To the contrary, the specification states,

> As described in detail below, electronically stored litigation data **6010** may be converted and/or processed in a variety of different manners. For example, the system may perform full-text and meta-data extraction, physical alteration of electronically stored litigation data **6010** (such as stamping or numbering), indexing of data to create searchable indexes, and maintain corresponding relational database structures.

'731 patent at 5:18-24. The specification goes on to state that "[t]hose with skill in the art will recognize that different forms of distributed processing exist and that other concepts related to distributed processing could also be applied to the present system." *Id*. at 5:33-36.

Indeed, the specification discloses several scenarios to illustrate how the concept of performing litigation-related ESI management tasks in a cloud based network may be practiced, each featuring technologies that were well-known in the art. In fact, the specification emphasizes that a multiplicity of alternatives for practicing the invention using a wide range of hardware and software technologies exist. For example, the specification states:

> As will be appreciated by those of skill in the art, the computers **22** *a*, **22** *b* need not be limited to

> personal computers, but may include hand-held devices, multiprocessor systems, microprocessor-based or programmable consumer electronics, minicomputers, mainframe computers, personal digital assistants, cellular telephones or the like depending upon their intended end use within the system. For performing the procedures described hereinafter, the computer executable instructions may be written as routines, programs, objects, components, and/or data structures that perform particular tasks. Within the computer network **20**, the computer executable instructions may reside on a single computer **22** *a*, or server computer **22** *b*, or the tasks performed by the computer executable instructions may be distributed among a plurality of the computers **22** *a*, **22** *b*. Therefore, while described in the context of a computer network, it should also be understood that the present invention may be embodied in a stand-alone, general purpose computing device that need not be connected to a network.

'731 patent at col. 3:21-39.

It is difficult to reconcile passages such as this with plaintiff's argument that the '731 patent claims a "specific technical solution" to the problem the inventors identified. The inventor does not claim to have invented "cloud computing" (which, according to the specification, "refers to the use of computational resources that are available remotely over a public network, such as the internet, and that are generally provided at a low cost and on an hourly basis.") '731 patent at col. 4:57-61). Nor does the inventor disclose or claim any new component or feature whose particular use in the claimed method is the reason for the invention's superiority over legacy technologies. To the contrary, the specification teaches that

11

"[a]ny virtual or physical computer that is in electronic communication with such a public network could potentially be available as a computational resource," *id.* at col. 4:61-64. Like the patent at issue in *TLI Communications*, the specification of the '731 patent also does not "provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms." *TLI Communications*, No. 2015-1372, slip op. at 9 (Fed. Cir. May 17, 2016).

Moreover, the fact that the specification describes a wide variety of alternative configurations supports the conclusion that the patent could preempt every application of the basic idea of using a cloud computing environment to process litigation-related ESI. *See Shortridge v. Found. Constr. Payroll Serv., LLC,* No. 14-cv-04850-JCS, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) (description of "a wide variety of alternative configurations" of the recited components "only underscores [the patent's] potential to preempt a virtually any use of" the abstract idea to which claims were drawn).

In short, it is clear from the face of the patent that it is directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *TLI Communications*, No. 2015-

1372, slip op. at 8 (Fed. Cir. May 17, 2016). Specifically, I conclude that the patent is directed to the abstract idea of performing litigation-related ESI management in a cloud-based environment. Accordingly, I turn to step two of the *Alice/Mayo* analysis: do the elements of claim 1, individually or in an ordered combination, transform that abstract idea into a patent-eligible application?

At the outset, I address plaintiff's argument that defendants' motion must be denied because there is "no evidence before the Court that a specific manner of processing electronic litigation documents in a cloud-based environment by dividing ESI into the smallest block based on the processing to occur and provisioning available resources in the cloud to process the next available block is 'conventional' or 'wholly generic.'" Opp. at 12. This argument falls short on multiple fronts.

First, as explained above, the '731 patent is not directed to a "specific manner of processing electronic litigation documents," but instead describes, without limitation, a variety of operating systems, devices, applications, and data formats that may be used to perform traditional litigation-related ESI management in a cloud-based environment.

Second, while it is true that some district courts have held that accused infringers must establish subject matter ineligibility under the "clear and convincing" standard, *see,*

13

*e.g., Trading Technologies International, Inc. v. CQG, Inc.*, 05-cv-4811, 2015 WL 774655, *3 (N.D. Ill. Feb. 24, 2015) (Coleman, J.) (denying motion for judgment as a matter of law); and *Kenexa BrassRing, Inc. v. HireAbility.com*, LLC, Civ. No. 12-10943, 2015 WL 1943826, *2 (D. Mass. April 28, 2015) (denying motion for judgment on the pleadings), others have declined to apply the standard, noting that "no authoritative law" requires it. *Wireless Media Innovations, LLC v. Maher Terminals*, LLC, 100 F. Supp. 3d 405, 411 (D. N.J. 2015). *See also Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. CV 14-1192-LPS-CJB, 2016 WL 476730, at *3 (D. Del. Feb. 5, 2016), *report and recommendation adopted*, No. CV 14-1192-LPS-CJB, 2016 WL 1268308 (D. Del. Mar. 31, 2016).

Indeed, the Supreme Court has not defined the standard of proof that applies to subject matter eligibility challenges under § 101, and individual judges of the Federal Circuit disagree about the correct standard. *Compare CLS Bank Int'l v. Alice Co. Pty. Ltd.*, 717 F.3d 1269, 1304-05 (Fed. Cir. 2013) (Rader, J., concurring-in-part and dissenting-in-part) ("any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence") *with Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring) ("no presumption of eligibility attends the section 101 inquiry.").

Even if the general presumption of patent validity applies to § 101 eligibility, however, the "clear and convincing" standard is an evidentiary standard that applies "only to the resolution of factual disputes, and not to resolution of pure issues of law." *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. CV 14-1192-LPS-CJB, 2016 WL 476730, at *3 (D. Del. Feb. 5, 2016), *report and recommendation adopted*, No. CV 14-1192-LPS-CJB, 2016 WL 1268308 (D. Del. Mar. 31, 2016). Indeed, Justice Breyer, joined by Justices Scalia and Alito, emphasized that very point in *Microsoft Corp. v. I4I Ltd. Partnership*, 564 U.S. 91 (2011), cautioning that "[m]any claims of invalidity rest...not upon factual disputes, but upon how the law applies to facts as given," and admonishing courts to keep the application of the clear and convincing standard "within its proper legal bounds." *Id.*, at 114 (Breyer, J., concurring).

As noted above, the Federal Circuit has made clear that subject matter eligibility is a question of law, *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (en banc), *aff'd*, 561 U.S. 593 (2010); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011) ("issues of patent-eligible subject matter are questions of law"). As explained below, nothing in the parties' submissions reasonably suggests that in this case, the issue turns on the resolution of any disputed factual issue.

Plaintiff asserts that evidence is required to determine whether limitations directed to the processing of ESI by dividing it into "blocks" for distributed processing by resources within a cloud computing network are drawn to "conventional" or "wholly generic" activities. I disagree. The only discussion of these limitations in the specification describes breaking down litigation related ESI into "blocks" of either individual documents or individual pages:

> By way of example, if 1,000,000 pages of documents are to be Bates stamped, the smallest block of information is one page. In this manner, the host computer will tell each virtual computer to take the next available page and Bates stamp it. On a different occasion, the smallest block of information that may be processed is by document, rather than by page. In this instance, the host computer will tell each virtual server to process the next available document.

'731 patent at col. 7:33-41. It cannot reasonably be disputed that breaking down and identifying litigation materials by page or by document (or by some other quantum as may be appropriate) is a "well-understood, routine conventional activit[y] previously known to the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294). Furthermore, the specification describes no mechanism for breaking down the information into "blocks," although plaintiff argues that this is an essential innovation of the patent. *See Internet Patents Corp.*, 790 F.3d at 1348 (patent failed to describe the mechanism

16

by which patent's claimed function was accomplished, "although this is stated to be the essential innovation.").

The specification does describe steps through which distributed processing of the information "blocks," once broken down, may proceed. *See* '731 patent at col. 7:4-53. Indeed, it discloses generic computing components (e.g. a "host computer," and "physical servers or virtual servers...having dedicated computational resources such as hard disk, memory, processor abilities, etc."), each performing its expected functions and communicating with the others "through a web services API, such as extensible markup language (XML) or other such language." *Id*. at col. 7:6-8, 24-26. The specification further explains that the transfer of information via the cloud may be secured by using "standard security encryption protocols such as SSL and PGP, which are well known in the industry." *Id*. at col. 4:65-68. In other words, the specification describes nothing more than the routine use of generic computing devices, languages, and protocols to accomplish well-known ESI management activities.

The Federal Circuit recently confirmed that dismissal on the pleadings pursuant to § 101 is appropriate under such circumstances. *See TLI Communications*, No. 2015-1372, slip op. at 11 (Fed. Cir. May 17, 2016). Rejecting the patentee's argument that "extraneous fact finding outside the record" was

required to determine whether the claims recited only "conventional" components, the court concluded that it "need only look to the specification" to determine the absence of an innovative concept. *Id*. at 11. For the reasons explained above, the same is true here.

None of plaintiff's cited authorities is to the contrary. In *DDR Holdings, LC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the Federal Circuit concluded that the asserted claims contained an "inventive concept" because they recited a specific, technical solution to the identified problem, which entailed a departure from "the routine, conventional functioning of Internet hyperlink protocol." *Id*. at 1257. Similarly, the court in *Prism Techs., LLC v. T-Mobile USA, Inc.*, No. 8:12CV124, 2015 WL 6161790, at *3 (D. Neb. Sept. 22, 2015), found an inventive concept because the claims "modify the way the Internet functions to provide secure access over a protected computer resource"). And in *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015), the court found that the asserted claim was "analogous to those in DDR Holdings" because it "specifies how an interaction between a mobile phone and a computer is manipulated in order to achieve a desired result *which overrides*

*conventional practice*." (Emphasis added).³ As explained above, the '731 patent, by contrast, is directed to a generic solution to the problem the inventors identified, and it claims a method and system based on well-understood, generic components that behave as expected and communicate with each other in standardized ways. *See TLI Communications*, No. 2015-1372, slip op. at 14 (Fed. Cir. May 17, 2016) (no inventive concept where "the recited physical components behave exactly as expected according to their ordinary use.").

### III.

For the foregoing reasons, defendants' motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 8, 2016

---

³ Plaintiff also cites *Nazomi Communications, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 967968, at *3 (N.D. Cal. Mar. 21, 2012), but only a portion of the quotation plaintiff attributes to that decision appears in the opinion as reported by Westlaw. At all events, the court's free-form analysis in *Nazomi*, which predates *Alice* and does not adhere to *Mayo*'s two-step analytical framework, is of little persuasive value. Indeed, Westlaw reports that it has been cited only once by another court, and then only to distinguish it. *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, No. C 11-06391 SI, 2012 WL 2599340, at *11 (N.D. Cal. July 5, 2012).